The next case today is National Labor Relations Board v. Wang Theatre, Inc. Appeal No. 201157. Attorney Tellegen. Thank you. Good morning, Your Honor. May it please the Court. My name is Arthur Tellegen. I represent the Wang Theatre, Inc., the respondent in this case. Your Honor, may I reserve three minutes for rebuttal? You may. Thank you. The Wang operates the largest dedicated performance venue in Boston. In pre-pandemic times, it hosted approximately 25 shows a year, including traveling Broadway-type musicals, which is the focus of today's case. The Wang and the producers of musicals had two different kinds of arrangements. One, the Wang simply provided the hall and got rent. The other, it also promoted the show and shared the profits with the producers. The producer of a musical was always responsible for bringing to Boston a stage-ready program. It had total control over the content, the production, and direction of the show. It always determined whether music would be live or recorded, and if live, how many of the musicians should be hired locally versus musicians that would travel with the show. This case revolves around a practice that was utilized by the producers until the latter part of 2014. For their convenience, they would sometimes ask the Wang to source the musicians. The producer would say how many musicians it needed, what instruments they played, and for the convenience of the producers, the Wang would hire a contractor. That's the contractors in quotes. That's the party's use. And he would, in fact, determine which musicians would be retained to work on the particular performance. The Wang would also payroll the musicians. The checks would come from them, but whether the Wang sourced the musicians or did not had no expense, no effect on the economics of the show. In either case, whether the producers sourced the musicians or the Wang sourced the musicians, it would be an expense of the show that would be credited against the revenue. The record reflects absolutely no involvement with the Wang in the supervision of the employees, except what I've stated. They worked on the direction of the producer. The general manager of the Wang testified the producers supervised the employees in all respects. The local musicians and the traveling musicians were indistinguishable for any meaningful term of employment. The wage scale that was paid to the local musicians was determined by the union. But by virtue of the agreement between the Wang and the producers, union scale was paid. Starting in 2014 and for over a year before the petition, representation petition below was filed, the practice was not used. The only musical that came to Boston during 2015, the producer actually sourced its own musicians. Nonetheless, the union filed a petition in early 2016, seeking representation of musicians who had in the past been sourced by Wang. The board ordered an election. 16 employees were found to be allowed to vote. The 16 employees during 2014 had worked a total of 1,000 hours. That's normal terms, a half, a full-time equivalent of an employee. They voted for the union and the board certified the results. The Wang asked the union what it wanted to bargain over. The union did not respond, but filed a ULP charge. The board issued a complaint. The board found, based on its rule that would not relitigate matters that could have been, from its perspective, raised in the representation case, it found that the Wang had violated the National Labor Relations Act by not bargaining over this group of employees who, at that time, had not worked for the Wang in approximately a year and a half. The case found its way to the court now twice. Nothing has changed. The National Labor Relations Act requires basically three things to form a bargaining relationship. It requires employees. It requires an employer that employs those employees, and it requires subject matter over which the employer and the union could bargain that relates to the terms and conditions of employment of those employees that that employer controls. None of those are present in this case. At the time of the certification of the bargaining unit, it had been over a year since even the remote connection that the Wang had with the local musicians had been in effect. There is no case in which the NLRB has certified a bargaining unit where no employee has been employed for over a year. No case. The case that the board relied on, the Juilliard case, has language which suggests it might have provided that possibility because it refers to a number of hours that an employee could work over the course of two years, but in that case, the employees had all worked within the prior year. Every case that followed Juilliard reflects exactly the same thing. There just is no case, and Juilliard doesn't discuss the issue. The board has yet to explain why not having worked for over a year is sufficient. Before you move on, Mr. Tallegan, in the normal case, the board would apply the Davison-Paxson formula, which looks to whether the employee regularly averages four or more hours of work per week for the last quarter prior to the eligibility date. I take it it's undisputed that the Davison-Paxson formula is not met here. The board said instead NLRB versus Juilliard, and then its subsequent decision, NLRB versus Kansas City Repertoire, allowed it not to follow the usual rule that there had to be some employees at the time of certification as of the last quarter. You have said that neither of those cases governs this situation, that in fact in both of those cases they had regular part-time employees, and that the board has not satisfactorily justified its deviation from its own precedent. I take it you are asking for a remand of vacate and remand on that point. Were we to do that, do we have to reach any of the other issues that you have presented? Yes, Your Honor. The board's order is defective for numerous reasons, including the most compelling reason, not to remand, which is the situation has not changed in the last now almost six years. I'm sorry, you're asking us not to remand but simply to vacate and end the case there? Is that your request? Yes, it is, Your Honor. Would that be on the grounds that you can't reconcile the Juilliard rule with the one employee rule? It's not exactly a reconciliation, but that is the answer. There should be no question that the board does not order bargaining between an employer with no employees or one to believe there has been since 2014 an employee in this alleged bargaining unit, and frankly, there's zero reason to believe there will ever be an employee in this bargaining unit. Okay, but that depends upon an assertion that the board cannot look back. We know they can look back more than a year to try to find employees. Is there something in the act that would preclude them from looking back a year? Is there, for example, statutory language that says at the time of certification? Because if there is any possibility of interpreting the act to allow this look-back period, I would think the appropriate remedy would be to vacate and remand. Your Honor, the statute is not specific as to exactly the issue as Your Honor has phrased it. The statute certainly suggests that a year is important because, for example, strikers lose their right to vote in elections after a year, the implication being fairly clear that the Congress thought the year period was significant. That said, a null unit allows the of the certification, no matter how many employees were or were not in the bargaining unit. When it becomes clear there are no employees remaining in the bargaining unit, the right to representation by the union ends. There is no bargaining, a one employee for that matter. Excuse me, at the time of the certification, did you have any employees? Not by the death, not even, well, Your Honor, the preliminary answer is never did it have any employees by the definition, but assuming that those folks that once were sourced by the Wang are employees of the Wang, assuming that, the answer is the last time anybody was so employed was at the end of 2014. The election was held in 2016. All right, so assuming that with the expansive definition of employee in the act, there were employees. It seems to me that what you're saying now that you were in a situation like where the employer goes out of business and has no longer any employees over which they have to bargain. Your Honor, that's correct. The case law is clear that even during that one year certification period where the union presumptively maintained its majority status, if the bargaining unit empties, the obligation to recognize the union ends. All right. So you're not relying merely on the period before the certification order. You are also saying that you cannot remand because the situation of no employees continued, which is analogous to what Judge Torea just said, and therefore the board has no power to recognize under these circumstances. That's correct, Your Honor. The board has not, the board's case law is consistent. I'm sorry, which case for the latter proposition are you most relying on? The null unit. Yeah, there's a Westinghouse case at 179 NLRB 239. There's a car called Far and Car Center 129 NLRB 319. Both are cited in the Weng's papers. Can I just ask one last question? So we have different time periods. The certification period, you say there were no employees. Does the same rule apply for the order to bargain? The no employee, the no employee rule, the null unit rule? Yes, Your Honor. And then there's now where you would have to jump into the unusual circumstance situation, right? Not precisely, Your Honor. The issue arises three separate times during the course of the travel of this case. One is, should there have been an election held? And there the issue is, what's an employee in this context? And what's the eligibility once you decide people are employees? Then you get to the summary judgment point where the board refused to take further, there's an affidavit in the record, but the board refused to hold a hearing saying nothing had changed. That's obviously wrong. Something had changed. Time had transpired and nothing had changed. Nothing had changed doesn't mean nothing is different from what the board decided then. Another six months had elapsed when there still was nobody who had been sourced by the Weng. And then there's today and the remand order would say to the board, now almost six years later, please decide whether there's anything to bargain over or any employees to bargain over. And I would suggest to you that that's a pointless exercise unless there's nothing remotely resembling anybody ever ordering an employer to bargain with the union where the union has not, there have been no employees in the bargaining unit for six years. It's a project to answer itself. That's the unusual circumstance at that point, your honor, at the third point in the judgment. I'm sorry I answered your question in a convoluted way. Thank you. Thank you. Thanks. Thanks, Brian. I believe that next is the board. May I ask Mr. Taligan if you would mute your audio and video and if Mr. Cantor would unmute his audio and video. May it please the court, Jared Cantor for the National Labor Relations Board. I don't see, I don't see the picture. Mr. Cantor, could you? Check your video and see if you can unmute yourself. It says the camera is unmuted. I'm sorry, judge. I'm not seeing it. No one's seeing me? Anyone see me yet? Oh, yes. Thumbs up. All right, good. I'll start again then. May it please the court, Jared Cantor for the National Labor Relations Board. Your honors, this case, as company counsel has been arguing, arises from atypical circumstances, but it is still subject to established board law in this area. Well, what we have before us is a request to enforce an order to bargain for violation of 885. Am I correct? That's the real crux of this case. Correct. All right. Tell me who represents the employees in this case. The union. And what employees do they represent? The union would represent any local musicians. Yes, yes. That they represent now that are employees of the employer. That's what you have when you have an 885 violation. You have to have two sides, one of whom represents the employees of one of the sides. Where does that come into the picture here? Well, your honor, where it comes in is at the time that all of this was originally transpiring, which is going back to 2016 and the hearing. But at some point after that, I'm sorry to interrupt you because I would really like to learn something, perhaps new law, because it's not any law that I'm familiar with. Seems to me that at some point, and maybe I should just switch right to the example I gave before. Assuming the employer was in business, it has a bargaining unit, it negotiates, and then it decides that it's no longer economically feasible and they go out of business. Do they have to continue to bargain? I know they have to bargain perhaps with the union about they're going out of business, but do they have to bargain a new contract after they cease to be in business? Well, no, your honor. Presumably there would be rather extensive and vigorous litigation before the board about the decision to close. And that's a very complicated area of the law. And obviously, this is, if your honor... But let's make it simple. There's no question that the employer has gone out of business because they don't want to risk the economics of being in business. So they close the factory and that's it. They have to continue to bargain a new contract or a contract with the union at that point. Well, in that case, your honor, that would be the situation where an employer has gone out of business. There is no employer there, there are no employees, and that's a permanent situation or the cases... Well, counsel, let me vary it. Let's suppose hypothetically a pandemic hits and the employer says to the employees, I'm very sorry, I have to let all of you go. And that situation continues over a several year period. Nonetheless, the employer hopes someday in the future that maybe it can resume operations. And so it does not officially disband the business, but it effectively goes out of business without any formal disillusion of it. All right. So deal with that hypothetical. Well, your honor, there would still be all of the attendant bargaining obligations if there was an incumbent union there, and that would be subject to the parties to sort of work out. Obviously, if the employer just went ahead and did all of those things, there might be a violation of the act there. No, no, you keep missing the point by reverting to that. At what point, when there are no employees, at what point after a period of some years, assuming there are no employees and further assuming there weren't ever any, can the board come to the courts to seek enforcement of a bargaining order? Well, your honor, I think that would be then, as in the cases that company has pointed to, there would have been a finding of fact by the board that the unit is empty. I mean, that's the cases that he was talking about, Kirkpatrick and Westinghouse and rice growers, that you would have had separate litigation on that point and it would have been contested and there would have been a finding of fact, which we don't have in this case. They raised the fact that within the previous year, there were no employees and you have this foreign car center, I assume that's still good law from 1960, saying the board has held that it will not certify a one-man back in those days, one-man unit because the principle of collective presupposes that there is more than one eligible person who desires to bargain. So, I assume that was raised during the certification phase. Not only that, but they also filed a motion for summary judgment, which the board, I think, refused to hear based on this same issue. Well, your honor, they opposed the general counsel moving for summary judgment after the failure to bargain occurred. So, it was opposing summary judgment was what the theater did here. And the board then said, no, we're going to enter summary judgment for general counsel because the head of the Wang Theater admitted that things hadn't changed much since the time a decade before when there was a bargaining unit. And I went back and read that testimony, and I think the board has mischaracterized the testimony. The basic business operation model continued. It had not changed. But the Wang was saying at that point, we don't have any employees. We haven't had any since 2014. And even in 2014, they weren't our employees for a variety of reasons. I don't want to get into that, but there weren't any people. And in order to deviate from the rule that Judge Saris has articulated and the rule which I articulated, the board relies on two of its precedents, which are plainly inapplicable here. Well, respectfully, your honor, those are the on-point cases for determining voter eligibility in the context of the theater. The Juilliard case, Juilliard had employees in every department. There was an issue there. Correct, your honor. At the time that it was being litigated, in all of the subject departments, there were one or two employees, but the people who were allowed to vote encompassed whoever satisfied the Juilliard test. But here you don't have any employees. That's the big difference. And I believe the board in the Juilliard decision noted that the Juilliard school was unique from employers in the theater industry because it was a theater school. And because it had an educational mission, it retained on a part-time basis a number of people who were determined to be employees. The Wang is not a theater school. On the board's own language, Juilliard does not govern this case. Well, your honor, I don't see that as being the dispositive because Kansas City Theater was not a school, but it is applying Juilliard in a similar situation where we have the difference. Yes, the employer in Kansas City had a consistent workforce with a predictable yearly schedule. That is not this situation. Well, what we know here, your honor, is looking at the record that Wang retained hired musicians 2009, 10, 11, 12, 13, 14. So all the way up until the people who voted in this election because of White Christmas and Annie. So all of those, that had been going up. And then, yes, we have, for whatever reason, nobody brought any musicals to the Wang Theater in 2015 other than Elf where the producer did it itself. And that's essentially then where the record ends because, interestingly, at the time of the hearing, which is, you know, the board is stuck looking at what is the hearing, the record evidence here. At the time of the hearing, the company's witness was talking about that there was a musical. So the hearing is January. And he's saying there's a musical coming in April. It was going to be the Wizard of Oz. And we don't know right now. They might ask us to hire musicians. We might not. And it could go either way. And so looking at that question of is there consistent hiring of these local musicians, we have it consistently from 2009 to 2014. And then at the time of the hearing, looking forward, there's a musical coming down the road where they might once again be retained. Is there any dispute that for the last six years they have not had any employees? Well, Your Honor, I can't dispute that because I am bound by the record. I can't take. What does the record say? How many years? Well, Your Honor, the hearing closed in January of 2016, at which time it showed that after those November and December 14 performances, no one had been there had been no further local musicians as of January 2016. So at least two years, you can't dispute. Well, Your Honor, that's 13 months. Suppose we have a proffer now that there's essentially been nobody for six years. And if this was remanded, would it be appropriate to look at the last six years? It sounds as if that might be what the Supreme Court was referring to as an unusual circumstance. It was remanded at the board's request on the joint employer situation. It's been a long time, and at least counsel represents that no one has been there for six years. Well, Your Honor, I think what the board's position how this should play out here is because obviously what we're looking at is time dependent. The refusal to bargain is back in June 2016. And so obviously there has the appellate proceedings in this case back and forth have put us in the position of having a lot of hindsight how things have played out. But in this case, looking respectfully now and certainly back then, there's still the board's position is there was an unlawful refusal to bargain at that time. And in this case, and I would point the court to Telemundo where the employer in that case was saying kind of a very similar argument. Your Honors, you need to look at how things have developed. The three people that the union is representing here now who went by the acronym TDs, they're all supervisors or managers now. So don't enforce this order against us. And the court said, we are looking at the record as it was developed in front of the board where you're making these extra record claims that these people are all supervisors now, which would essentially go to the same point. It's a null unit. If they're all, in fact, supervisors, the unit's null. But what you do in that case is there still is the unfair labor practice. The order should still be enforced, and then there will be subsequent proceedings. The employer here is represented by experienced counsel. In any subsequent case, and maybe it doesn't even rise to the level of a case, but there can be subsequent litigation in front of the board or coming back to the board through various mechanisms to say, okay, yes, the court enforced the order, but here's where things stand now. It would be very similar to a case where counsel was here saying the theater just burned down a couple weeks ago, and so we're not going to reopen. Don't enforce the order. And my argument, presumably, in that case would still be the same, that they still unlawfully refused to bargain all those many months ago. And then after enforcement, that's where there are post-enforcement processes where they can come back and essentially on a new record or in a non-record sort of proceeding, show the court or show the board the theater's burned down. We've decided not to reopen it. Because interestingly here, as to prior hypotheticals, I don't believe the Wang Theater has said that it will never source these musicians again, that it's gotten out of this. You know, if a producer, once the pandemic lifts, says we'd like to bring our shows again, but you know what? We don't want to bring a lot of musicians because we're still in a post-pandemic world. Could you provide all these musicians? I don't think the company has ever or the theater has ever said it will never do that again. Well, would that mean that you would sort of agree with Mr. Taligan that if the one man or the one person, one employee unit controls here, there's nothing to remand for. It's just a reversal. The board wouldn't want to look at anything else. Well, Your Honor, the board's position is always that if there's something that's concerning the court, it would prefer a case to come back for further fact finding. And that's essentially, and if I may finish that point, and that's essentially the fact finding, I would again point to Telemundo, that that needs to happen in any subsequent proceeding, because that would be essentially a finding of fact. There needs to be a factual finding. And if they're similar to these cases that they point to, the board needs to find as a matter of fact, based on a record, that there are no employees and it's a permanent condition, and it has been for whatever period of time. The board otherwise rests on its words. May I ask a question? Let's put aside whether the order was enforceable in 2016, because there had been no employees for at least a 13-month period. Put that aside. Are you saying that the board lacks the authority or the power to reconsider until after the court has resolved your enforcement petition? No, Your Honor. Certainly at this point, the court has full jurisdiction over the case because No, I'm not doubting my jurisdiction. What I'm saying is I thought Mr. Tellegen had tried to bring before the board the issues that there continued to be no employees, and the board refused to hear it on the basis that all they were looking at was the time of the enforcement order, and then the unfair labor practice order. There seemed to be a suggestion that because there was a petition for enforcement, the board could not consider this. You have said repeatedly, enforce the order. If things have changed, have them come back to the board and petition the board for relief at that point. I'm just trying to understand what you think your power is. Well, Your Honor, if it's after enforcement in this case, then there would be mechanisms for enforcement on the basis of what happened in 2016. Are you asking for a remand and what purpose would be served by that remand? Well, Your Honor, in that case, then the board would respectfully submit that the enforcement should be denied and the case vacated and remanded back for the board. Why a remand? Why a remand if Wang can start a new proceeding? The new proceeding could take several different forms, Your Honor, but because the preference would certainly be because the board's position is that there has been a litigation, the issue about future bargaining could be litigated. I'd ask you to make an assumption and then ask you what purpose it would be served by a remand if you lose on the initial issue of whether there were two employees. Well, because the remand would then presumably permit the company to ask for the record to be reopened, which it did not do when the case was back in front of the board during that period, and put in the evidence in a proper type of hearing about where things stand now. The last time any August 22, 2016, opposition to summary judgment, and that was the last time any type of evidence has been proffered. Since then, the company has essentially relied on what it supplied in that August 2016 opposition and has just has represented that it has stayed the same through the rest of 2016, through 2017, through 2018, through 2019. But it's all been proffers as proffers. There's no evidence back at the certification stage? There must have been, right? That there were no current employees? Well, certainly even at the time of the hearing, there were no musicians at that time. At the time of the hearing, at the time the petition had been received, I think the record shows that they had no employees, and they hadn't had any employees for 13 months. Am I correct? Correct. Now, isn't it up to you if there has been a change in that to have brought it to the attention of the court before you asked for enforcement of the order? Well, that's always been a part of the case. That's always been part of the record. We have to assume that you haven't done so is because there hasn't been any change in that situation. Is there something wrong with that? Well, Your Honor, I don't think the board would know. If, hypothetically speaking, the company had in fact hired a bunch of people in 2019, that's not something that would be in the record. It seems to me that if they had hired any employees, the least that would have happened is that you would have filed some kind of a motion to inform you that they had employees. Well, Your Honor, I don't think we would have, respectfully. The board litigates the case on the record from the hearing. I mean, this again would be the Telemundo situation where, to the extent in Telemundo that the three employees were now supervisors, that all gets litigated essentially on a fresh record in whatever case comes next, another unfair labor practice case, a unit clarification type proceeding. But essentially, once the hearing record's been closed, and in this case, there's never been a motion to reopen the record, including after the case sat in front of the board. Was there a motion for reconsideration? There was a motion for reconsideration, Your Honor, after the board's 2016 decision. Could they have appealed at that point, Wang, or do they have to wait for the unfair labor practice? If they disagreed with the certification, if Wang disagreed with the certification, could Wang have appealed at that point, or does Wang have to wait for the unfair labor practice proceedings? The company must wait for the unfair labor practice. If they're going to challenge the unit, you have to wait until the unfair labor practice charge is filed and proven. So this is the only way you could raise it, really. All right. Thank you. Thank you, Your Honors. Mr. Tellegen, you have two minutes for rebuttal. Briefly, Telemundo is a turnover case. There were employees in the bargaining unit to fight about whether the fact of the elimination of the alleged supervisors changed the circumstances. In 2016, not only had there been no employees, but there's an affidavit in the record that we filed presaging the evidence we wanted to put on at a hearing by the Wang's general manager that said, not only haven't there been employees, this shows in the future I'm going to have employees, and from my opinion, we're never going to have employees again, given all the circumstances. Before this hearing, we requested of the board agreement that we could file an affidavit to supplement the record to show that there had been no employees. The board objected to having a record supplemented in that fashion. I mean, I started being colloquial. It's a dumb idea to believe that there will ever be employees sourced by the Wang again, because all that would happen is that would allow the possibility that the musicians union would try to force the Wang to stop doing business with any producer that didn't hire local employees and didn't do music. Putting aside whether the demand for bargaining, which we argue otherwise, is unlawful, or there's no lawful subject matter to bargain over, it certainly would explain why the producers are no longer asking the Wang to source employees. It was for the convenience of the producers. It's not convenient if the union is going to start trying to create a hot cargo clause between Wang and the union. There aren't any employees now. I represent that to you. I want to put it in an affidavit. The board objected to that. It's been six years. There's no prospect for future employees. There's no reason to remand the case. Thank you. Thank you. Thank you. That concludes our argument for today. The session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.